IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELO LENELL DAVIS ) | |
| ) | Civil Action No. 15-503 |
| Plaintiff, ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| v. ) | |
| ) | |
| PENNSYLVANIA DEPARTMENT ) | |
| OF CORRECTIONS, SCI Greene County, ) | |
| MS. IRMA VIHLIDAL, MS. NEDRA ) | |
| GRECO, MR. ROBERT GILMORE, ) | |
| DR. PARK, and DR. JIN, ) | ECF Nos. 22, 25 |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

**LENIHAN, M.J.**

Presently before the Court are Motions to Dismiss filed by Defendants Robert Gilmore, Nedra Grego, Irma Vihlidal, the Pennsylvania Department of Corrections ([ECF No. 22](#)), and Defendants Dr. Jin and Dr. Park ([ECF No. 25](#)). For the reasons that follow, the Motions will be granted for failure to state a claim, and because Plaintiff seeks relief from a defendant that is immune from suit.

FACTUAL ALLEGATIONS

Plaintiff, Angelo Lenell Davis ("Plaintiff"), proceeding pro se, filed this civil rights action pursuant to [42 U.S.C. § 1983](#). Named as Defendants are the Pennsylvania Department of Corrections ("DOC"), Corrections Healthcare Administrator Irma Vihlidal ("Vihlidal"), Nurse Supervisor Nedra Grego ("Grego"), and Superintendent Robert Gilmore ("Gilmore") (collectively "the DOC Defendants"). Also named are Dr. Park and Dr. Jin (collectively "the Medical Defendants"). Plaintiff alleges violations of his Eighth and Fourteenth Amendment

rights during his incarceration at the State Correctional Institution at Greene ("SCI-Greene"). (ECF No. 6 at IV. B.) Specifically, Plaintiff alleges that his Eighth Amendment rights were violated when he was denied adequate and proper medical treatment for his diagnosis of Chronic Granulomatous Disease ("CGD") . (ECF No. 6 at VI.) As to the Fourteenth Amendment, Plaintiff avers that he was denied equal protection when he was treated differently from others with chronic diseases. (ECF No. 6 at VI.) Plaintiff also appears to raise claims sounding in substantive due process.

Plaintiff avers that he was medically evaluated when he entered the DOC at SCI-Camp Hill in February 2007. At that time, he was given a chest x-ray which showed that he had CGD. (ECF No. 6 at IV. C. ¶ 1.) Thereafter, in March 2007, he was transported from SCI-Camp Hill to SCI-Fayette, which according to Plaintiff, is built on coal ash and coal mining waste and debris. (ECF No. 6 at IV. C. ¶ 2.) In May 2008, Plaintiff was transferred to SCI-Greene, which, according to Plaintiff, is also built on coal ash and coal mining debris. (ECF No. 6 at IV. C. ¶ 3.)

On October 11, 2011, Plaintiff went to medical at SCI-Greene for treatment of severe coughing and spitting of phlegm. He saw Defendant Dr. Park at this time. (ECF No. 6 at IV. C. ¶ 5.) Plaintiff avers that he developed this severe coughing and spitting long before October 2011, and finally reported to medical because other inmates were complaining about his coughing and spitting. (ECF No. 6 at IV. C. ¶ 4.) Plaintiff states that Dr. Park indicated that he heard cracking in his lungs, and inquired whether Plaintiff ever worked in the coal mines because "it looks like you [Plaintiff] have black lung." (ECF No. 6 at IV. C. ¶¶ 6-7.) Plaintiff indicated that he has never lived in coal mining regions and that he was always physically fit. Plaintiff was given a 30-day prescription for Guaifenesin, an expectorant, for which he was charged a co-pay. (ECF No. 6 at IV. C. ¶ 8.) Plaintiff completed the medication as prescribed for 30 days.

He did not continue with the medication thereafter because it made him itch, causing dark patches on his skin. His coughing and spitting symptoms lessened in intensity but they did not cease completely. ([ECF No. 6 at IV. C. ¶ 9](#).)

Later in October, Plaintiff returned to Dr. Park to inquire about his reaction to the prescribed medication. Dr. Park consulted with Dr. Jin. Dr. Jin and Dr. Park explained that he had an acute lung infection. ([ECF No. 6 at IV. C. ¶ 13](#).) When Plaintiff asked Drs. Jin and Park why he wasn't checked or monitored for his CGD, Dr. Jin responded that Plaintiff had not complained about his condition until now. No further medication was prescribed and Plaintiff was sent back to his housing unit. ([ECF No. 6 at IV. C. ¶¶ 14-15](#).)

Plaintiff complains that even though he was diagnosed with CGD in 2007, it was never monitored from 2008 through 2011. Plaintiff contends that this failure to monitor his chronic disease demonstrates deliberate indifference to his serious medical needs. ([ECF No. 6 at IV. C. ¶ 10](#).) Instead, Plaintiff alleges that he should have received the same medical treatment as other inmates with chronic conditions, such as those with high blood pressure, diabetes, or hepatitis A, B, and C. According to Plaintiff, because his CGD was not monitored as were other inmates with chronic conditions, his Fourteenth Amendment rights pursuant to the Equal Protection Clause were violated. ([ECF No. 6 at IV. C. ¶¶ 11-12](#).)

Plaintiff filed grievance No. 440717 on December 14, 2012. ([ECF No. 6 at IV. C. ¶ 17](#).) Plaintiff avers that he did not file a grievance about the alleged denial of medical treatment until December 14, 2012 because he was charged around this time for the same medication that made him itch in October 2011. Plaintiff states that in 2007, his diagnosis was of a chronic condition, and yet, in October 2011 and apparently thereafter, he was charged a co-pay for his medication

pursuant to DC-ADM 820[1] because he had an acute lung infection. (ECF No. 6 at IV. C. ¶ 16.) Plaintiff described the research he conducted on black lung disease and the high levels of air pollution in Greene County. (ECF No. 6 at IV. C. ¶ 18.) Plaintiff also requested that he be seen by an outside professional, that his co-pay be refunded, that the DOC pay $3,000,000.00 for future health and medical expenses, and for a transfer out of the region. (ECF No. 6 at IV. C. ¶ 18.)

On January 9, 2013, Nurse Supervisor Defendant Grego responded to the grievance and denied the co-pay refund. (ECF No. 6 at IV. C. ¶ 19.) She also indicated that he had not complained of any respiratory issues since his initial diagnosis of CGD when he entered the DOC in 2007, and that when he did present to the medical department in October 2011, he had an acute lung infection. She also indicated that Dr. Jin reviewed Plaintiff's x-ray with him, and that no one had placed him at risk by incarcerating him in these "coal mining regions." (ECF No. 6 at IV. C. ¶ 19.) Plaintiff denies that Dr. Jin reviewed the x-ray with him. (ECF No. 6 at IV. C. ¶ 20.)

On January 11, 2013 Plaintiff filed Grievance No. 443808 based upon the same subject matter as Grievance No. 440717. (ECF No. 6 at IV. C. ¶ 21.) Defendant Vihlidal responded to the Grievance and indicated that Plaintiff's chest x-ray of October 12, 2012 notes "Chronic Granulomatous disease." She also indicated that she would have Dr. Jin speak to Plaintiff about his concerns, his x-ray results, and intervention. (ECF No. 6 at IV. C. ¶ 21.)

---

[1] DC-ADM 820 provides that an inmate is not required to pay a co-pay fee for medical treatment related to a "chronic medical disease/illness requiring regular return and/or *continuous* visits." DC-ADM 820, Section 1. B. 7 (emphasis in original).

Superintendent Louis Folino[2] responded to Grievance No. 440717 at the appellate level and agreed with Defendant Grego's Initial Review Response, indicating that the records reflected that Plaintiff had an acute infection, not a chronic condition, and therefore Plaintiff was properly charged the co-pay. (ECF No. 6 at IV. C. ¶ 22.)

Superintendent Folino responded to the appeal at Grievance No. 443808. Plaintiff avers that Folino indicated that the 2007 x-ray reflected that Plaintiff had CGD, but that Plaintiff did not complain to the medical department with respiratory problems until October 2011, when Plaintiff was diagnosed with an acute illness. Folino also noted that Plaintiff was seen again in December 2011 and October 2012 for an acute illness. He further stated that medications were prescribed and Plaintiff was appropriately charged the co-pay. Folino concluded that if the medical department determined that an outside specialist was necessary, a consult would be written for Plaintiff. (ECF No. 6 at IV. C. ¶ 23.) Plaintiff avers that an outside specialist was consulted by the medical department. (ECF No. 6 at IV. C. ¶ 24.)

Plaintiff seeks $3,000,000.00 in damages, costs and legal fees. (ECF No. 6 at VI., p.11.)

LEGAL STANDARDS

Recently, the United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although

---
[2] Plaintiff names Superintendent Robert Gilmore as a defendant and not Superintendent Folino, but only references Folino in the Complaint.

> "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *Golden v. Cook,* 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, the Court must liberally construe the factual allegations of the Complaint because pleadings filed by pro se plaintiffs are held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Therefore, if the Court "can reasonably read [the] pleadings to state a valid claim on which [Plaintiff] could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [Plaintiff's] unfamiliarity with pleading requirements." *Wilberger v.*

6

*Ziegler*, No. 08-54, 2009 WL 734728 at *3 (W.D. Pa. March 19, 2009) (citing *Boag v. MacDougall,* 454 U.S. 364 (1982) (*per curiam*)).

ANALYSIS

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

**DOC Defendants' Motion to Dismiss**

1. Defendants Gilmore, Grego, and Vihlidal

In support of their Motion to Dismiss, individual Defendants Gilmore, Grego, and Vihlidal argue the following: 1) Plaintiff fails to aver the personal involvement of Defendants Gilmore, Grego, and Vihlidal; and 2) Plaintiff's Eighth Amendment claims are time barred. (ECF No. 23.) Plaintiff responds that the Defendants' responses to Plaintiff's grievances

7

constitute sufficient personal involvement in the alleged violation of his constitutional rights. (ECF No. 37 at 12-19.)

"'A[n] individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Here, under the liberal notice pleading standard of Civil Rule of Procedure 8, Plaintiff's Complaint fails to allege facts that, if proven, would show the individual Defendants' involvement in the alleged violation of Plaintiff's Eighth and Fourteenth Amendment rights. Plaintiff alleges generally that the individual Defendants "knew" or had "personal knowledge" of his CGD, but failed to check or monitor it from 2007 through 2011. (ECF No. 6 at IV. C. ¶ 24.) The only other allegations involving these individual Defendants relate to their roles in responding to Plaintiff's grievances. (ECF No. 6 at IV. C. ¶¶ 19-23.) A prison official's involvement in handling an inmate grievance does not establish actual knowledge or acquiescence in the underlying alleged constitutional violation. *Ridgeway v. Guyton,* Civil Action No. 13-1254, 2015 WL 877778, at *4 (W.D. Pa. March 2, 2015) (participation in grievance process insufficient to show personal involvement in alleged unlawful conduct) (citing *Rode,* 845 F.2d at 1207; *Ramos v. Pa. Dep't of Corrs.*, Civil No. 4: CV-06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (review and denial of grievances and subsequent administrative appeals do not establish personal involvement)). Because participation in the

grievance process is insufficient to establish personal involvement in the alleged unlawful conduct, Plaintiff has failed to state a claim against Defendants Gilmore, Grego, and Vihlidal.[3]

In addition, Defendants correctly argue that these individual Defendants, who are not physicians, cannot be considered deliberately indifferent to serious medical needs because they failed to respond directly to Plaintiff's medical complaints, where they have no reason to believe that Drs. Jin and Park were mistreating, or not treating, Plaintiff. *See Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004); *Durmer v. O'Carroll*, 991 F.2d 64, 67-68 (3d Cir. 1993). Therefore, Plaintiff's claims against the individual Defendants based upon their failure to respond to Plaintiff's medical needs when they knew Drs. Jin and Park were treating Plaintiff must also fail.

2. Defendant DOC/SCI-Greene

In support of its Motion to Dismiss, DOC/SCI-Greene argues that the claims against the DOC/SCI-Greene are barred by the Eleventh Amendment. (ECF No. 23.) Plaintiff responds that the Eleventh Amendment does not protect the DOC/SCI-Greene because it engaged in willful misconduct. (ECF No. 37 at 20-22.)

The Eleventh Amendment[4] bars suits against a state in federal court by private parties. *Laskari v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought."

---

[3] Because Plaintiff fails to state a claim against Defendants Gilmore, Grego, and Vihlidal for lack of personal involvement, the Court need not address the Defendants' statute of limitations argument.

[4] The Eleventh Amendment of the United States Constitution provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.

U.S. CONST. amend. XI.

*Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Pugh*, 438 U.S. at 781)).  Eleventh Amendment immunity protects entities created by state governments that operate as alter egos or arms of the State.  See *Lake Country Estates v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 402 (1979). The United States Supreme Court has held that a § 1983 action brought against a "State and its Board of Corrections is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit." *Pugh*, 438 U.S. at 782.  The Commonwealth of Pennsylvania has specifically reserved its right to immunity from suit in federal court pursuant to the Eleventh Amendment.  42 Pa. Cons. Stat. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.")  Moreover, the United States Supreme Court has held that § 1983 does not override a State's Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

In addition, the DOC, as an agency of the State, and individuals sued in their official capacities, are not "persons" for purposes § 1983 and therefore may not be sued under the civil rights statute.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Thus, the DOC/SCI-Greene is immune from suit under the Eleventh Amendment, and consequently, the DOC/SCI-Greene must be dismissed as a defendant.  Likewise, any claims against the individual DOC Defendants in their official capacities must be dismissed.  Because Plaintiff seeks relief from a Defendant who is immune from suit, the Motion to Dismiss will be granted.

### **Medical Defendants' Motion to Dismiss**

1. Eighth Amendment claim against the Medical Defendants

In support of their Motion to Dismiss Plaintiff's Eighth Amendment claim, the Medical Defendants argue the following: 1) Plaintiff's claims are time barred; and 2) Plaintiff has failed to state a claim of deliberate indifference. ([ECF No. 26](#).) Plaintiff responds that his claims are not time barred because he must exhaust his administrative remedies before he may file suit. ([ECF No. 38 at 15-19](#).) Plaintiff also argues that his Eighth Amendment rights were violated because he was not monitored for his CGD from the time that he entered the DOC in 2007 until October 2011 when he became ill with a lung infection. ([ECF No. 38 at 19-29](#).)

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." [U.S. CONST. amend. VIII](#). This protection, enforced against the States through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *[Farmer v. Brennan](#)*, [511 U.S. 825, 832 (1994)](#) (quoting *[Hudson v. Palmer](#)*, [468 U.S. 517, 526-27 (1984)](#)).

In the context of medical treatment, an inmate must prove two elements: (1) that he was suffering from a "serious medical need," and (2) that prison officials were deliberately indifferent to the serious medical need. *[Estelle v. Gamble](#)*, [429 U.S. 97, 106 (1976)](#).

The first showing requires the court to objectively determine whether the medical need was "sufficiently serious". A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *[Monmouth County Correctional Institutional Inmates v. Lanzara](#)*, [834 F.2d 326, 347 (3d Cir. 1987)](#), *cert. denied*, [486 U.S. 1006 (1988)](#).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). A prisoner must demonstrate that the official acted with more than mere negligence. *Estelle*, 419 U.S. at 105; *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103 (3d. Cir. 1990). Moreover, "[a] court may not substitute its own judgment for diagnosis and treatment decisions made by prison medical staff members." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

Here, even assuming that Plaintiff's CGD is a serious medical condition, Plaintiff cannot make out an Eighth Amendment claim. The averments of the Complaint fall woefully short of establishing that the Medical Defendants were deliberately indifferent to Plaintiff's serious medical needs. Although Plaintiff was diagnosed with CGD in 2007 when he entered the Pennsylvania DOC, he does not aver that he was symptomatic at that time. Moreover, Plaintiff did not complain to the Medical Defendants until October 2011. The Medical Defendants cannot be deliberately indifferent to Plaintiff's serious medical needs unless they knew that Plaintiff was suffering from symptoms of his chronic condition, and disregarded an excessive risk to Plaintiff's health and safety. As soon as the Medical Defendants became aware of Plaintiff's medical needs, they began treatment. Simply because Plaintiff disagrees with his course of

treatment will not make out an Eighth Amendment violation. *White*, 897 F.2d at 110. Nor will allegations of negligence be sufficient to state a claim pursuant to the Eighth Amendment. *Estelle*, 419 U.S. at 105; *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

Plaintiff further contends that because he was diagnosed with CGD in 2007 when he entered the DOC, and because a Pennsylvania statute requires that his medical records accompany all transfers, the Defendants knew of his chronic condition and failed to treat it. ([ECF No. 37 at 11-12](#).) In other words, Plaintiff assumes that the Defendants were actually aware of Plaintiff's CGD and a concomitant need for treatment when he was transferred to SCI-Greene. These allegations fall far short of what the United States Supreme Court requires in order to establish deliberate indifference:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38. Here, Plaintiff's averments only establish that the Defendants knew of Plaintiff's need for medical treatment in October 2011, at the earliest, when he first complained to medical. At this point, the Medical Defendants began treating Plaintiff.[5] Hence, the Medical Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim will be granted for failure to state a claim.

---

[5] This analysis applies with equal force to the individual Defendants Gilmore, Grego, and Vihlidal. Although Plaintiff avers that they should have known of Plaintiff's CGD when he entered SCI-Greene, "an official's failure to alleviate a significant risk that he should have perceived but did not," will not violate the Eighth Amendment. *See Farmer*, 511 U.S. at 837-38.

13

2. Fourteenth Amendment claims

In support of the Medical Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claims, the Medical Defendants argue that Plaintiff's Fourteenth Amendment claim is duplicative of his Eighth Amendment claim. Plaintiff responds that he was denied equal protection of the laws when he did not receive ongoing treatment for his chronic disease as do others inmates with chronic conditions such as diabetes, hypertension and hepatitis A, B, and C. Plaintiff also appears to argue that his substantive due process rights were violated.

First, with regard to Plaintiff's arguments pertaining to substantive due process, Plaintiff's claim fails as a matter of law. The United States Supreme Court has stated that "if a constitutional claim is covered by a specific constitutional provision, such as the . . . Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *U.S. v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (discussing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Here, Plaintiff's claims regarding his medical care at SCI-Greene are more appropriately analyzed under the more specific Eighth Amendment provision than under the more general and open-ended standard of substantive due process. *See Albright v. Oliver*, 510 U.S. 266, 271-72 (1994). Therefore, Defendants' Motion to Dismiss Plaintiff's substantive due process claim will be granted.

Plaintiff's claim under the Equal Protection Clause of the Fourteenth Amendment also fails. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Plaintiff claims that he was denied equal protection of the laws because he was not monitored for his chronic condition from 2007 through October 2011 as were other inmates with chronic conditions such as hypertension, diabetes, and hepatitis A, B, and C.

The Equal Protection Clause directs that all persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 201, 216 (1982)). Two theories exist upon which a plaintiff may state an equal protection claim. The traditional theory protects a plaintiff from: (1) a law or government action that substantially burdens a fundamental constitutional right; or (2) discrimination based upon membership in a protected class such as race, national origin, or gender. *See, e.g.*, *City of Cleburne*, 473 U.S. at 340-41. If the burdening of a fundamental right or membership in a protected class is not alleged, a plaintiff may still make out an equal protection claim under an alternate theory known as the "class of one" theory. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Pursuant to the class of one theory, a plaintiff may state an equal protection claim if he or she alleges irrational and intentional differential treatment when compared with similarly situated individuals. *Id.* Specifically, a class of one plaintiff "must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (2006).

Here, Plaintiff makes no averments to suggest that he is a member of a protected class. Instead, Plaintiff attempts to state a claim pursuant to the class of one theory. Plaintiff's allegations, however, are insufficient to make out a plausible claim. First, Plaintiff fails to plausibly show that he was treated differently than other inmates similarly situated. Plaintiff attempts to make out a claim by alleging that he and other inmates with chronic illnesses are similarly situated, even though the medical treatment required for CGD is dissimilar to treatment required for hypertension, diabetes and hepatitis. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) ("Persons are similarly situated under the Equal Protection Clause when

15

they are alike 'in all relevant aspects.'") (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)); *see also Plyler*, 457 U.S. at 216 ("The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.") (quoting *Tigner v. Texas*, 310 U.S. 141, 147 (1940)). That is, inmates with hypertension, diabetes, and hepatitis are not similarly situated to Plaintiff diagnosed with CGD. *See generally Flaming v. University of Texas Medical Branch*, Civil Action No. H-15-2222, 2016 WL 727941, at *9 (S.D. Texas, February 24, 2016) (degenerative disc disease with chronic low back pain is different in fact from diagnosis of cancer); *Roulhac v. Lawler*, Civil No. 1:12-cv-0311, 2014 WL 3855181, at *10 (M.D. Pa. Aug. 6, 2014) (inmates with "serious medical conditions" not similarly situated); *Hickman v. Mercado*, Civil Action No. 4:13-cv-797-0, 2014 WL 66778, at *6 (N.D. Texas Jan. 8, 2014) ("disabled inmates [with] joint pain, knee pain, back pain, shoulder pain and muscle spasms not similarly situated with plaintiff diagnosed with Raynaud's Phenomenon," a disorder that causes blood vessels to narrow under certain conditions; plaintiff also not similarly situated with inmates suffering from chronic obstructive pulmonary disease, congestive heart failure, asthma, bronchitis, emphysema, and cancer); *Tatta v. Wright*, 616 F. Supp. 2d 308, 319 (N.D.N.Y. 2007) (inmates with hepatitis C not similarly situated where one inmate responded medically to initial treatment while plaintiff inmate did not).

Even assuming that Plaintiff is similarly situated with inmates suffering from these chronic diseases, a liberal construction of Plaintiff's allegations does not suggest any purposeful discrimination. Plaintiff only alleges that he was not monitored as were other inmates with different types of chronic illnesses. There are no averments, and nor do Plaintiff's allegations taken as a whole suggest, that any Defendant acted with a discriminatory purpose. *See McClesky v. Kemp*, 481 U.S. 279, 292 (1987). That is, Plaintiff fails to aver how any Defendant

16

intentionally treated him differently than inmates diagnosed with hypertension, diabetes or hepatitis. Therefore, Defendants' Motion to Dismiss Plaintiff's equal protection claim will also be granted.[6]

The Court notes that "[w]hen a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson v. Mayview Hosp.*, 293 F.3d 103,108 (3d Cir. 2002). Here, any attempt by Plaintiff to amend would be futile based on the factual allegations he has already stated, and as a matter of law.

For the above reasons, the Court will grant the Motions to Dismiss for failure to state a claim, and because Plaintiff seeks relief from a defendant that is immune from suit.

An appropriate order will follow.

Dated: March 18, 2016

                                                BY THE COURT

                                                s/Lisa Pupo Lenihan
                                                LISA PUPO LENIHAN
                                                United States Magistrate Judge

cc:      Angelo Lenell Davis
          GY7304
          SCI Camp Hill
          P.O. Box 200
          Camp Hill, PA 17001-0200

          All counsel of record
          Via electronic filing

---

[6] Because Plaintiff fails to state a claim against the Medical Defendants for violation of the Eighth and Fourteenth Amendments, the Court need not address the Medical Defendants' statute of limitations argument.